**In re Alfred J. ROMAGNOLO, Debtor.**

**Alfred J. ROMAGNOLO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 93–10995–8P7.**
**Adv. No. 95–322.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 15, 1996.

R. Wade Wetherington, Tampa, FL, for Plaintiff.

Philip Doyle, U.S. Dept. of Justice, Washington, DC, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matters under consideration are a Motion for Summary Judgment filed by Alfred J. Romagnolo (Debtor) and a Cross–Motion for Summary Judgment filed by the United States of America (Government). The motions are filed in an adversary proceeding commenced by Alfred J. Romagnolo (Debtor) against the United States of America (Government) in which the Debtor seeks a declaration by this Court that his liability for unpaid taxes are not within the exception to discharge dealing with taxes under section 523(a)(1) of the Bankruptcy Code (Code). Both the Debtor and the Government contend that there are no genuine issues of material facts and that they are entitled to a determination of the dischargeability of the taxes involved in their respective favor as a matter of law.

The facts relevant to the issue under consideration are indeed without dispute and are as follows:

The Debtor filed his voluntary Petition for Relief under Chapter 7 on October 19, 1993, and scheduled the Government as an unsecured creditor with a claim of $193,140.06, representing unpaid taxes for the years of 1982 up to and including 1985. The returns for these years were filed by the Debtor, but after an audit, the Government assessed an additional liability for taxes as the result of disallowance of a certain deduction claimed by the Debtor based on losses from a tax-shelter.

On January 29, 1993, Debtor and his representative, Manuel Junco, Jr. (Junco) attempted to submit an Offer in Compromise (January OIC) for the years 1982 through 1985 to the Internal Revenue Service, by presenting Form 656 to the Revenue Officer assigned to the case, LaVeita Kollen (Kollen). This initial offer proposed to settle Debtor's liabilities in the amount of $5,000.00. Kollen, after reviewing Debtor's financial statements, rejected the Offer in Compromise informing the Debtor to come back when he had a serious offer to present.

On March 26, 1993, the Debtor submitted a new Offer in Compromise (March OIC) for the 1982–1985 taxes and for 1989 and 1992 taxes in the amount of $15,000.00. The March OIC identified the Debtor and his deceased wife as the taxpayers. The proposed March OIC was handled by IRS agent Kollen. Upon perusing Debtor's proposed March OIC, Kollen failed to notice that this March OIC included Debtor's tax liability for 1989 and 1992 (future tax liabilities) of "Alfred J. Jr. & Maureen A. (Dec'd) Romagnolo" as the taxpayers. Thereafter, the IRS started to process the March OIC on March 26, 1993 through the IRS machine after Kollen signed and accepted it for consideration. The issue being disputed between the two parties at hand is whether upon Agent Kollen's signature the March OIC became "processable" and thus "pending" for purposes of satisfying section 507(a)(8)(A)(ii) of the Bankruptcy Code and thus allowing Debtor's financial indebtedness to the Government to be dischargeable.

Section 507(a)(8)(A)(ii) provides:

(a) The following expenses and claims have priority in the following order ...

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts ...

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or ....

Processable is a term of art defined in the Internal Revenue Manual (Manual). It is undisputed this Manual controls the actions of Revenue Officers, and the Officers are obligated to follow its mandates.

The Manual directs that an OIC is deemed to be pending under the Bankruptcy Code when the IRS has determined that the Offer is "processable". Internal Revenue Manual § 57(10)7.1(4) and § 57(10)9.1(2) provide that an Offer is considered to be pending when an IRS employee signs a processable Offer and that the employee shall sign it only if it is in fact "processable".

Debtor contends that Officer Kollen withdrew her signature from the March OIC, which was still unpaid, when she realized that the future tax liabilities listed on the March OIC, as well as other errors, in fact, made the March OIC unprocessable. Up until she revoked her signature, Kollen stopped collection efforts towards the Debtor which was the IRS's standard operating procedure while a "processable" Offer in Compromise was pending. This is consistent with the March OIC being processable (and thus pending for Bankruptcy Code § 507) and consistent with Kollen's acceptance of Debtor's waiver of the statutory periods of limitation set out in the March OIC.

Upon realizing her mistake, (when Kollen asked the Debtor for a copy of his 1992 tax return) Kollen deemed the OIC "not processable" because the March OIC did not identify the Debtor's new wife, the March OIC included a future tax liability and the March OIC Offer amount of $15,000.00 (the Offer) was less than the amount shown on the line 30 titled "equity in asset" on the Collection Information Statement filed with the March OIC. This realization by Kollen occurred while the IRS machinery was already processing the March OIC, arguably making the March OIC both processable for IRS pur-

poses and pending for purposes of Bankruptcy Code § 507.

Thereafter, on or around April 21, 1993, the Debtor paid his 1992 taxes. On April 23, 1993, the Debtor was allowed to amend his March OIC. This amended OIC (April OIC) was rejected and Romagnolo appealed on May 13, 1993. Subsequently on September 3, 1993, the Debtor withdrew his amended April OIC and thus on that same date the appeal became moot.

The Debtor's contention is that the April OIC was pending under OIC rules since Debtor appealed the IRS rejection. (IRS Form 656). Form 656, (OIC form) reads in part as follows:

(8) The taxpayer-proponents agree to the waiver and suspension of any statutory periods of limitations for assessment and collection of the tax liability described in paragraph (1) while the offer is pending ... The offer shall be deemed *pending* from the date an authorized official of the IRS accepts taxpayer-proponents waiver of the statutory periods of limitation *and* shall *remain pending* until an authorized official of the IRS formally, in writing, accepts, rejects or *withdraws* the offer. *If there is an appeal* with respect to this offer, *the offer shall be deemed pending until the date the Appeals office formally accepts or rejects the offer in writing.*

Debtor frames the issue before this Court as follows: "Whether an Offer in Compromise submitted by Mr. Romagnolo to the Internal Revenue Service was 'pending' pursuant to § 507(a)(8)(A)(ii), Bankruptcy Code, such that the tax indebtedness at issue was assessed within 240 days, plus any time plus 30 days during with [the] Offer in Compromise ... was pending, before the date of the filing of the petition ..." (Memo of Debtor in support of Summary Judgment Motion, p. 2).

Debtor's position is that his Offer in Compromise submitted by him on March 26, 1993 did not become pending until April 23, 1993, when he amended the Offer. Debtor further contends that it was the IRS's mistake (through their agent, Kollen) that is the cause of the litigation before this Court.

The Debtor also argues that Kollen was not authorized to sign the Offer in Compromise, and thus the OIC was not "pending" during the disputed time period of March 26, 1993 through April 23, 1993. Debtor claims that Kollen was not authorized to sign the March OIC because the Offer was facially unprocessable as defined in the Internal Revenue Manual. In the Debtor's Memo in Support of his Motion for Summary Judgment, Debtor cites Treasury Regulations § 301.6502–1(a)(2)(i) (Regs. following § 6502 of the Internal Revenue Code) in support of his position by arguing that the district director had to execute the agreement along with the Debtor/Taxpayer. Debtor further argues that the district director can delegate this authority to revenue officers so long as "the OIC strictly complies with the criteria set out in the Internal Revenue Manual, and only after the revenue officer has complied with the procedure set out in the Manual as well." (Junco dep. at 24–25). Thus, the crux of Debtor's argument is that despite the fact that the March OIC was put through the IRS machinery and characterized as "processable", it never truly was since the Manual was not strictly complied with and Revenue Officer Kollen has admitted in her deposition that she was not authorized to sign the March OIC because it did not comply with IRS manual policy.

In the alternative, Debtor contends that if the record is not sufficient to determine whether agent Kollen had the authority to sign an unprocessable OIC, this Court should grant Summary Judgment in his favor regardless if the Government fails to prove nondischargeability of taxes by a preponderance of the evidence. *In re Aberl,* 159 B.R. 792, 795 (Bankr.N.D.Ohio 1993). This Court need not decide this issue at this time.

The Government advanced four reasons why this Court should find that Debtor's OIC was "pending" as of March 26, 1993, rendering his indebtedness to the Government nondischargeable. Only two of these theories need be discussed here. First, the Government contends that since the Debtor agreed in writing that the Offer would be pending on the date his waiver of the limitations period was accepted by the IRS, he is bound by that agreement; second, the Government argues that under any "ordinary understanding" of the word "pending", the March OIC was pending on March 26, 1993 because the IRS began actively considering the Offer and began processing it through the IRS machinery. Thus, the Government further contends that even if Debtor's March 23, 1993 OIC was so defective to have been "unprocessable" as that term is used in the Internal Revenue Manual, the Debtor has no enforceable rights as a taxpayer under the Manual, citing *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

Here, the Government allowed the Debtor to amend his March OIC on April 23, 1993 in order to make it "processable" and in conformity with the IRS manual. At the same time, the Government comes before this Court asking that the March OIC be the reference point so that Debtor's taxes will be nondischargeable. The Government cannot have it both ways. In this instance, where the Government is clearly in error in failing to follow its own procedures, it would be unjust to reward the IRS with a huge windfall after the arguably careless processing carried out by one of its agents. In sum, this Court finds that the equities in this case clearly side with the Debtor, and the IRS must be held accountable for its own mistakes.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Debtor, be and the same is hereby, granted and the indebtedness claimed by the Government is hereby found not to be within the exceptions set forth in § 523(a)(1). Therefore, it is discharged pursuant to § 727(a) of the Bankruptcy Code. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Government, be and the same is hereby, denied.

DONE AND ORDERED.